NEIL LAUGAND

VERSUS

FOUR POINTS BY SHERATON

\* \* \* \* \* \* \*

* NO. 2024-CA-0687

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 19-01228, DISTRICT "08"
Honorable Catrice Johnson-Reid, The Office of Workers' Compensation
\* \* \* \* \* \*
**Judge Monique G. Morial**
\* \* \* \* \* \*
(Court composed of Judge Daniel L. Dysart, Judge Nakisha Ervin-Knott, Judge
Monique G. Morial)

Arthur G. Laugand
2718 Onzaga Street
New Orleans, LA 70119

COUNSEL FOR PLAINTIFF/APPELLANT

Thomas Michael Ruli
Jeffrey Charles Napolitano
JUGE NAPOLITANO GUILBEAU RULI FRIEMAN & WHITELEY
3320 West Esplanade Avenue North
Metairie, LA 70002

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**FEBRUARY 26, 2025**

MGM
DLD
NEK

This is a workers' compensation case. Claimant seeks review of the Office of Workers' Compensation's (OWC) judgment granting defendant-employer's motion for involuntary dismissal, which dismissed his claim for certain medical benefits. Claimant also seeks review of the OWC judgment finding that he committed fraud and thereby forfeited his workers' compensation benefits pursuant to La. R.S. 23:1208. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

This litigation arises out of a March 11, 2016 accident. Claimant, Neil Laugand, was working as a bellman for defendant-employer, Springfield Corporation d/b/a Four Point Sheraton Hotel, when his right shoulder and hand were struck by the mirror of a vehicle traveling the wrong way down the street. The accident is not in dispute. On February 21, 2019, after nearly three years of medical treatment for a shoulder injury including two arthroscopic shoulder procedures, Claimant filed a 1008 disputed claim for compensation form[1] seeking

---

[1] Louisiana Revised Statute 23:1310 pertains to the "[i]nitial filing of claim with office of workers' compensation administration," and it provides:

A. If, at any time after notification to the office of the occurrence of death or injury resulting in excess of seven days lost time, a bona fide dispute occurs, the

1

approval for an MRI of his cervical spine. Defendants, Springfield Corporation and LUBA Casualty Insurance Company, filed an answer to the claim, in which they admitted to the accident and resulting shoulder injury, but contended that Claimant's newly raised cervical spine complaints were not related to the accident at issue and are thus not compensable.

On January 7, 2020, Claimant filed an amended disputed claim for compensation, seeking additional benefits and challenging the calculation of the average weekly wage rate and the accuracy of the indemnity benefits paid.[2] Defendants filed a reconventional demand and supplemental and amending answer, wherein they alleged the affirmative defense of fraud under La. R.S. 23:1208.[3]

The matter proceeded to trial on September 9, 2022. At the conclusion of Claimant's case-in-chief, the defense moved for an involuntary dismissal of Claimant's claims. The trial judge found that Claimant failed to meet his burden to prove that his cervical complaints or radicular symptoms were related to the March 11, 2016 accident and granted the motion for involuntary dismissal. As to

employee or his dependent or the employer or insurer may file a claim with the state office, or the district office where the hearing will be held, on a form to be provided by the assistant secretary.

B. In addition to any other information required by the assistant secretary, the claim shall set forth the time, place, nature, and cause of the injury, the benefit in dispute, and the employee's actual earnings, if any, at the time of the filing of the claim with the office.

[2] This amended disputed claim for compensation was subsequently voluntarily dismissed by Claimant prior to trial.

[3] On April 9, 2021, Defendants filed a motion for summary judgment on their fraud defense, contending that Claimant fraudulently sought an increase in his indemnity benefits calculation based on a misrepresentation that he had amended his 2015 tax return to reflect an increased income. On August 3, 2021, the OWC denied Defendants' motion for summary judgment. In its written judgment, the OWC stated that it was unable to consider Claimant's IRS documentation in connection with the motion for summary judgment because the documents were not verified and/or authenticated. Nevertheless, the OWC found the determination of the subjective issue of intent to commit fraud inappropriate for summary judgment and denied Defendants' motion for summary judgment.

Defendants' fraud defense pursuant to La. R.S. 23:1208, the OWC determined that Claimant willfully "made statements and misrepresentations regarding his wages, earnings, tax filing and tip income, solely for the purpose of increasing his average weekly wages and compensation rate in an effort to seek additional workers' compensation benefits."[4] The judgment ordered that Claimant had forfeited his right to workers' compensation benefits pursuant to La. R.S. 23:1208. This timely appeal followed.

## LAW AND ANALYSIS

On appeal, Claimant seeks review of the judgment granting Defendants' motion for involuntary dismissal and dismissing his claim for medical treatment. He further appeals the OWC's judgment on Defendant's fraud claim, wherein the OWC made a factual finding that Claimant committed fraud in violation of La. R.S. 23:1208. Because a finding of fraud in a workers' compensation case results in a forfeiture of all benefits, including medical benefits, as a matter of law, we will first address the judgment finding that Claimant committed fraud in violation of La. R.S. 23:1208.

### *Fraud*

The workers' compensation statutes have a separate anti-fraud forfeiture provision by which employers may affirmatively defend against paying a claim. *Lovas v. Gallagher Bassett Servs., Inc.*, 18-0801, p. 11 (La. App. 4 Cir. 3/20/19),

---

[4] The OWC took Defendants' fraud claim under advisement and issued a written judgment on February 3, 2023. The judgment also awarded restitution to Defendants and assessed a $5,000.00 civil penalty against Claimant, made payable to the Kids Chance Scholarship Fund pursuant to La. R.S. 23:1208. Claimant subsequently filed a motion for new trial, which the OWC denied. We note that the amount of restitution awarded is not provided in the judgment and thus it is premature to determine whether the restitution amount awarded complied with La. R.S. 23:1208(D) as that issue is not before this Court at this time.

267 So.3d 129, 137(quotations omitted). This Court has recently discussed these anti-forfeiture provisions as follows:

> La. R.S. 23:1208 applies to situations in which, during a pending claim, a claimant has made a false statement or misrepresentation for the specific purpose of obtaining workers' compensation benefits. *Id.* La. R.S. 23:1208 provides that:

> [i]t shall be unlawful for any person, for the purposed of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

> In addition[*sic*] to criminal and civil penalties, the fraud provisions state that any person violating Section 1208 "may be ordered to make restitution" and "shall forfeit any right to compensation benefits under this Chapter." La. R.S. 23:1208(D), (E). Fraudulent statements encompass those made to anyone, including the employer, physicians, or insurer. *Resweber v. Haroil Constr. Co.,* 94-2708, pp. 1-2 (La. 9/5/95), 660 So.2d 7, 9.

*Lovas*, 18-0801, p. 11, 267 So.3d at 137.

The Louisiana Supreme Court has examined the legislative history of the anti-fraud provisions and found "a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims." *Resweber v. Haroil Const. Co.*, 94-2708, p. 7 (La. 9/5/95), 660 So.2d 7, 12.

Forfeiture under La. R.S. 23:1208 **shall** be ordered if the employer or insurer proves: "1) a false statement or representation, 2) which is willfully made, and 3) which is made for the purpose of obtaining workers' compensation benefits." *Lopez v. Home Furnishing Store*, 00-0031, p. 5 (La. App. 4 Cir. 10/31/00), 772 So.2d 884, 887. (emphasis in original)(quoting *Resweber*, 94-2708, p. 7, 660 So.2d at 12). Fraudulent statements encompass those made to anyone, including the employer, physicians, or insurer. *Resweber*, 94-2708, p. 9, 660 So.2d at 1-2.

"Once it has been determined that a false statement or representation has been made, the [OWC] must make a factual determination as to whether, based on

4

the record, the statement or representation was willfully made specifically to obtain benefits, and thus to defraud the workers' compensation system, such that benefits should be forfeited." *Cembell Indus., Inc. v. Smith*, 24-0348, p. 6 (La. App. 4 Cir. 2/11/25), ___ So.3d ___, ___, 2025 WL 457220, at *12-13 (*citing Fontenot v. State ex rel. Dep't of Health & Hosps.*, 12-1265, p. 4 (La. App. 1 Cir. 4/2/13), 116 So.3d 695, 698 (internal quotations and citations omitted). "If the workers' compensation judge's findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings because only the factfinder can be aware of the variations of demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.* at p. 5, ___ So.3d ___, 2025 WL 457220, at *10 (*quoting Safford v. New Orleans Fire Dep't*, 23-0495, p. 24 (La. App. 4 Cir. 2/1/24), 384 So.3d 909, 928).

In support of its fraud claim under La. R.S. 23:1208, Defendants alleged that Claimant made false statements or misrepresentations in an effort to increase his workers' compensation benefits by (1) alleging that he filed an IRS 1040 X Form to amend his 2015 income reported to the IRS, reflecting an additional $42,240.00 in cash tip income, and (2) submitting to defense counsel, during the course of discovery in litigation, two forms or slips titled, "Employee Reports of Tip Income" for the months of January 2016 and February 2016, immediately preceding the March 2016 accident. Defendants claim that the evidence introduced at trial demonstrates that Claimant did not in fact amend his 2015 tax return as he represented and never reported the alleged additional tip income to his employer or the IRS. Defendant further alleges that Claimant fraudulently reported an unsubstantiated increased tip income for January and February 2016

during the course of litigation solely in an effort to increase the calculation of his average weekly wage benefits.

At trial, Claimant testified that he began his employment at the Four Point Sheraton Hotel as a security officer and worked his way up to a bellman to increase his income. He testified that he was paid an hourly rate of approximately $7.25 to $7.50 in addition to cash tips. Claimant testified that he would routinely fill out "Employee Reports of Tip Income" forms or slips provided by his employer to reflect cash tip income earned for tax purposes. Claimant testified that he would regularly fill out tip forms, make a copy of each for himself, and then turn in a copy to his employer. He testified that he turned in the two cash tip income forms for January and February of 2016 at the end of those months and would expect his employer to have a record of them; however, he stated that they could have been misplaced by his supervisor and not turned into the payroll department. Claimant testified that he turned in his tip forms regularly to the front desk, which is an open area where "people were going back and forth….so things happen with your stuff, or whatever." At the time of trial, Claimant could not locate his 2016 tip income forms. He testified that he maintained copies of the 2016 forms until 2019 and then threw them away.

Concerning his 2015 tax return, Claimant testified that, during the course of the separate tort litigation filed against the driver involved in the accident, he discovered that his 2015 tax return did not include his cash tip income. He decided then to amend his 2015 tax return to accurately reflect his income including tips. He testified that he utilized the services of Ms. Helen Bougere through VITA ("Volunteer Income Tax Assistance"), who assisted him in the preparation of the documents. Claimant further testified that he completed and filed with the IRS an

amendment to his 2015 tax return to reflect an additional $42,240.00 in cash tip income.[5] However, he testified that Ms. Bougere instructed him to destroy or throw away his supporting documentation, including the January and February 2016 tip income forms, after he completed and filed the 2015 amendment.

Defendants presented the testimony of Ms. Bougere, a twenty-nine-year employee of the United Way IRS VITA program. Ms. Bougere testified that Claimant visited the VITA program office sometime after tax season in 2019 to complete or amend his 2012, 2013, 2014, and 2015 tax returns. She testified that VITA processed and completed Claimant's 2012-2014 returns. However, she was unable to process his 2015 tax return amendment because he did not provide his 2015 W-2 or any other necessary supporting documentation. She testified that without this documentation, the amendment could not be filed. Ms. Bougere testified that, having worked as a tax preparer in some capacity for nearly 39 years, she never instructed Claimant or advised any other client to destroy or throw away any supporting tax documentation.

Ms. Carmel Ann Budo testified at trial that she has worked as an administrative manager handling human resources, payroll record keeping, and wage management for Ohio Management, L.L.C., a sister company of Springfield d/b/a Four Points Sheraton for more than twenty years. She testified that, concerning employee tip forms, the on-site managers would collect employee tip forms from the bellman's immediate supervisor and submit them to the main office

---

[5] Claimant attempted to introduce into evidence three different documents purporting to be documents he alleges he filed with the IRS to amend his 2015 return. The OWC overruled the admissibility of that evidence, finding that the documents were not authenticated nor certified by the IRS. At trial, defense counsel argued that the three documents Claimant attempted to introduce into evidence reflect that each of the three forms contained different dates, signatures, and stamping and were not competent evidence to prove that Claimant had filed any of the documents with the IRS. Claimant did not proffer that evidence and that issue is not before the Court.

in Metairie. She testified that in the twenty years performing payroll services for the Four Points Sheraton Hotel, she has never had a bellman produce a tip report of $2800 or $2900 for one month in cash tip income. She further testified that such a high report of cash tip income may raise a "red flag" to an immediate supervisor.

Concerning Claimant's 2015 payroll records, Ms. Budo testified that the certified payroll records reflect that Claimant earned a total in income of $21,287.00 and further, Claimant's W-2 provided to him by his employer reflected an income of $21,287.00.[6] Ms. Budo stated that in her twenty-year employment conducting payroll for this employer, Springfield Corporation d/b/a Four Points Sheraton Hotel, she has never had a bellman report that his tip forms had not been calculated properly or included in his W-2 form. Ms. Budo further testified that she did not have any record of any tip forms for Claimant dated in January 2016 or February 2016 and confirmed that the alleged tip forms Claimant contends he filled out and turned in were never reported to payroll.

Defendants introduced into evidence Claimant's certified wage records for the six-month period of his employment as a bellman with Four Points Sheraton Hotel prior to the accident at issue. The certified records reflect the following amount of reported cash tip income:

> 9/11/2015: $147.00
> 9/25/2015: $500.00
> 10/9/2015: $301.00
> 11/6/2015: $300.00
> 11/20/2015: $150.00
> 12/18/2015: $250.00
> 1/1/2016: $45.00

---

[6] Defendants also introduced into evidence certified IRS records, reflecting Claimant's reported 2015 wages to be $21,287.00.

At the conclusion of trial, the OWC took the matter under advisement and allowed for post-trial briefs on the issue of fraud. On February 3, 2023, the OWC issued a judgment and reasons for judgment, finding that Claimant had committed fraud as set forth in La. R.S. 23:1208 and had thus forfeited his workers' compensation benefits. In the written reasons for judgment, the OWC specifically stated:

> The court listened to the live testimony of Neil Laugand and the Administrative Manager at Four Points by Sheraton, Carmel Ann Budo; read all admitted evidence, specifically the deposition transcripts of Helen Bougere, United Way VITA employee; reviewed the certified Internal Revenue Service tax returns for Neil Laugand from 2014-2016; and the two (2) Form 4070s – Employee's Report of Tip Income, one dated January 5, 2016 in the amount of $2,900.00 and the other dated February 3, 2016, and all post-trial submission.

> The Court does not believe the testimony of Neil Laugand. The Court was presented with conflicting testimony and documentation which showed that the testimony of Neil Laugand was false. The Court believes that the testimony provided by Neil Laugand was self-serving for purposes to convince the Court of his position. The Court reviewed documentation that had been submitted by Neil Laugand that purported to show that he had amended his 2015 Internal Revenue Service tax return. However, the certified records of the Internal Revenue Service show that the only tax returns by them were for the tax year 2015 - Form 1040. That no other years were received nor were there any amended tax returns for any years, specifically 2015, at the of this trial.

> Neil Laugand further testified that he used the services of the Volunteer Income Tax Assistance (VITA) program of the United Way to help prepare and file his amended tax return. The admitted deposition transcript of Helen Bougere, a twenty-nine (29) year United Way employee, shows that while Neil Laugand did appear at the United Way for assistance to amend his 2015 tax return, however, Helen Bougere was unable to assist Neil Laugand because he was missing important documentation necessary to file the amended return, i.e. the original 2015 tax return and other supporting documentation such as the Form 4070 – Employee's Report of Tips. Helen Bougere further testified via deposition that she did not advise Neil Laugand to throw away any documents necessary to support his tax filings for any years as he suggested in his testimony.

> Additional evidence used by Neil Laugand to support his claim of inflated income have also been discredited. The live testimony of

9

Carmel Ann Budo seems to solidify for the Court that the documentation provided by Neil Laugand, i.e. the Form 4070s - Employee's Report of Tips, were false and made for the purpose of increasing his average weekly wage and compensation rate. In her experience as a thirty (30) plus year administrative manager, twenty years in this current position at Four Points by Sheraton, it is her opinion that the Form 4070s – Employee's Report of Tip Income are a part of the payroll reports and used to calculate the average weekly wage. That in her tenure as administrative manager, she has never seen tip report forms as high as the one claimed by Neil Laugand. That as part of her duties in compiling wage records for Neil Laugand, the two (2) Form 4070s at issue are not contained in any records held by Four Points by Sheraton.

Thus, Four Points by Sheraton and LUBA Workers' Compensation have established that Neil Laugand has violated Louisiana Revised Statute 23:1208 and committed fraud by willful and materially made statements and misrepresentations regarding his wages, earnings, tax filing and tip income, solely for the purpose of increasing his average weekly wages and compensation rate in an effort to seek additional workers' compensation benefits from them.

The OWC's written reasons reflect that Claimant's credibility was a significant consideration in the factual determination that he had committed fraud in violation of La. R.S. 23:1208. Based on a thorough review of the record, we do not find that the OWC committed manifest error or was clearly wrong in its determination. *See Lovas*, *supra* (wherein this Court found that the claimant's credibility was a significant consideration to support the factual determination that the claimant had committed fraud).

The OWC clearly considered the credibility of the witnesses and made a factual determination that Claimant had in fact willfully "made statements and misrepresentations regarding his wages, earnings, tax filing and tip income, solely for the purpose of increasing his average weekly wages and compensation rate in an effort to seek additional workers' compensation benefits." Upon review of the

record, we find that the OWC did not err in its judgment and we affirm the OWC's February 3, 2023 judgment on Defendants' fraud claim.

La. R.S. 23:1208 provides that if it is determined that a claimant has committed fraud in an effort to increase his workers' compensation benefits, that claimant "shall forfeit any right to compensation benefits under this Chapter." La. R.S. 23:1208(E). Because our review reflects that the OWC did not err in its determination that Claimant violated La. R.S. 23:1208, we consequently affirm the OWC ruling dismissing Claimant's disputed claim for compensation related to medical benefits because those benefits are forfeited as a matter of law. *St. Bernard Par. Police Jury v. Duplessis*, 02-0632, pp. 8-9 (La. 12/4/02), 831 So.2d 955, 960 (wherein the Louisiana Supreme Court found that forfeiture of benefits under the anti-fraud provisions applies to *all* benefits, including medical and indemnity benefits); *see also Ard v. Orleans Material & Equip.*, 98-0312, p. 3 (La. App. 4 Cir. 12/29/98), 727 So.2d 1183, 1185 (wherein this Court held that forfeiture under La. R.S. 23:1208 after a fraud determination results in the forfeiture of all benefits).

**DECREE**

Accordingly, the judgments appealed are affirmed.

**AFFIRMED**

11